CHRISTOPHER J. HICKS
Washoe County District Attorney
MICHAEL W. LARGE
Deputy District Attorney
Nevada State Bar Number 10119
P.O. Box 11130
Reno, NV 89520-0027
mlarge@da.washoecounty.us
(775) 337-5700

ATTORNEYS FOR WASHOE COUNTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

MARK B. DUNCAN,

        Plaintiff,

vs.

WASHOE COUNTY through the WASHOE COUNTY SHERIFF CHUCK ALLEN; and DOES 1-10,

        Defendants.

Case No. 3:17-CV-00142-HDM-WGC

**<u>ORDER</u>**

Before this Court is defendant Washoe County's ("Washoe County") Motion for Summary Judgment. (ECF No. 24). Plaintiff Mark Duncan ("Duncan") has responded, (ECF No. 25) and Washoe County has replied (ECF No. 26).

Duncan was a deputy with the Washoe County Sheriff's Office. When a position on the Washoe County Consolidated Bomb Squad was opened, Duncan applied for and tested for the position. At the conclusion of the testing, Duncan was ranked sixth of the seven candidates who completed the testing. The position was awarded to the top ranked individual.

Officer Duncan filed this action against Washoe County, asserting claims of (1) a violation of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, for failure to promote him to the Washoe County Consolidated Bomb Squad, and (2) retaliation in violation of Title VII of the Civil Rights Act.

**I.　Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Lynn v. Sheet Metal Workers Int'l Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

**II.　Analysis**

**A. Age Discrimination**

To survive a motion for summary judgment on an age discrimination claim under the ADEA, Duncan must first establish a prima facie case of age discrimination. *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (finding that the *McDonnell Douglas* burden-shifting framework applies to ADEA claims at the summary judgment stage). To establish a prima facie case of age discrimination, a plaintiff must show that: "(1) he is a member of a protected class;

(2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). At the summary judgment stage, the plaintiff must produce "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *Shelley*, 666 F.3d at 608 (*quoting O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)); *Stever v. US Bancorp*, 3:14-CV-00273-LRH, 2015 WL 3864730, at *4 (D. Nev. June 23, 2015), *aff'd sub nom. Stever v. U.S. Bancorp*, 690 Fed. Appx. 491 (9th Cir. 2017). If the plaintiff establishes a prima facie case, the "burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged actions." *Shelley,* 666 F.3d at 608 (quoting *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010)). "If the defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Id*. "To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at trial that age was the 'but-for' cause of the employer's adverse action." *Id*. at 607 (*citing Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

### 1. Prima Facie Case of Age Discrimination

#### *a. Member of a Protected Class*

Duncan is over the age of 40 and therefore is a member of a protected class.

#### *b. Qualified for Position*

Duncan fails to present admissible evidence that he was qualified for the position on the Bomb Squad. At the conclusion of the testing for the Bomb Squad, Duncan was ranked sixth out of the seven candidates. This testing was done by a neutral evaluation committee comprised of several law enforcement agencies and used both subjective and objective criteria.

In regard to his qualifications, it is undisputed that in 1991, Duncan falsified a police report during the course and scope of his employment with Washoe County. He was suspended from duty. This constitutes a potential *Brady/Giglio* violation that requires disclosure prior to his testimony in any criminal case. FBI secret clearance was a prerequisite to being on the Bomb Squad. FBI Special Agent Mark West informed the Washoe County Sheriff's Office that he did not believe that an officer with a *Brady* violation could obtain the necessary clearance.

Aside from unsupported, uncorroborated, hearsay testimony of Duncan that he was advised by three other individuals that he would not be selected for a placement on the bomb squad because of his age, there is no evidence of age discrimination. Duncan provided no evidence that he deposed or obtained affidavits of the individuals to support the alleged statements. To defeat summary judgment, Duncan "must respond with more than mere hearsay and legal conclusions." *Kaiser Cement Corp. v. Fischbach and Moore, Inc.*, 793 F.2d 1100, 1104 (9th Cir. 1986). Accordingly, this Court finds that Duncan has failed to present admissible evidence that he was qualified for the position on the Bomb Squad.

### c. *Adverse Employment Action*

This Court finds that not being placed on the Bomb Squad is sufficient to constitute an adverse employment action.

### d. *Similarly Situated Employees Outside Class Were Treated Differently.*

Duncan has not presented any evidence that the candidate who was selected for the Bomb Squad or other candidates who applied for the position on the Bomb Squad were treated differently than he was during the testing and selection process. All candidates went through the physical and oral examination process for participation in the Bomb Squad and were ranked by a neutral evaluation committee.

Accordingly, this Court finds that Duncan has failed to meet his burden to present admissible evidence to support a prima facie case of age discrimination under the ADEA.

//

## 2. Legitimate, Nondiscriminatory Reason

Assuming *arguendo*, that Duncan had presented sufficient evidence to establish a prima facie case of age discrimination, this Court finds that there are no triable issues of material fact countering Washoe County's legitimate, non-discriminatory reason for Duncan not being selected to the Bomb Squad.

As stated previously, it is undisputed that Duncan tested for the position on the Bomb Squad. The examination process for the Bomb Technician position included a physical portion and an oral interview portion. The physical portion of the examination was conducted and evaluated by two members of the Bomb Squad: Jason Morgan and Chris Carter of the Reno Police Department. The oral interview portion of the exam was conducted by Sgt. Bowlin of Washoe County Sheriff's Office, FBI Agent Mark West, and Commander Moss of the Tahoe Douglas Bomb Squad. On the second day of interviews, Commander Moss was unavailable, so Reno Police Officer Carter attended as a panelist. At the conclusion of the testing and interview, Duncan ranked sixth of the seven candidates. The position was awarded to the highest ranking candidate.

The use of such panels is common in both business and government, and a defendant's reliance on a panel's recommendation suffices as a legitimate "non-discriminatory reason" for declining to promote a particular candidate. *Blue v. Perciasepe*, 970 F. Supp. 2d 34, 43 (D.D.C. 2013) (citing *Fischbach v. District of Columbia Dept. of Corrections,* 86 F.3d 1180, 1182 (D.C.Cir.1996); *see also Obi v. Anne Arundel County, Md.,* 28 Fed.Appx. 333, 335 (4th Cir.2002); *Mason v. Geithner,* 811 F.Supp.2d 128, 203 (D.D.C.2011)).

Duncan has presented no admissible evidence to show that Washoe County's usage of the Bomb Squad testing was a pretext for unlawful discrimination. Accordingly, this Court finds that summary judgment is appropriate on Duncan's ADEA claim.

### B. Retaliation

Duncan brings his retaliation claim pursuant to Title VII of the Civil Rights. The Ninth Circuit applies the same standard in retaliation cases under both the Title VII and ADEA. *See*

*Hashimoto v. Dalton,* 118 F.3d 671, 675 n.1 (9th Cir.1997) ("[T]he ADEA anti-retaliation provision is 'parallel to the anti-retaliation provision contained in Title VII,' and . . . 'cases interpreting the latter provision are frequently relied upon in interpreting the former.'"). To establish a claim of retaliation, a plaintiff must prove that (1) he engaged in a protected activity; (2) thereafter he suffered an adverse employment action; and (3) there is a causal link between the plaintiffs protected activity and the adverse employment action. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) (citing *Yartzoff,* 809 F.2d at 1375). To show a causal link, the plaintiff must show that protected activity was the but-for cause of the adverse employment action. *See Gross v. FBL Fin. Services, Inc.*, 129 S. Ct. 2343, 2346 (2009) (mixed motive instruction is never proper in an ADEA case).

The Ninth Circuit has interpreted "adverse employment action" to mean "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (adopting EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)). Adverse employment actions include "actions that materially affect compensation, terms, conditions, or privileges" of employment. *Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 970 (9th Cir. 2002)(internal citations and quotations omitted) (quoting 42 U.S.C. § 2000e–2(a)(1)).

It is undisputed that Duncan filed a grievance on January 29, 2016 complaining that his non-assignment to the Bomb Squad was due to age discrimination. This is a protected activity under Title VII and the ADEA.

Duncan alleges three adverse employment actions in the Complaint: (1) his non-assignment to the Bomb Squad; (2) charging Duncan with a negative write-up for taking approved sick time on January 12, 2016; and (3) placing Duncan on Paid Administrative Leave to allow him to consider transfer to the Detention Division.

There is no evidence to support the allegation that Duncan's grievance about age discrimination was the reason that he was not assigned to the Bomb Squad or the reason that he

received a negative write-up for sick leave. A plaintiff must be subjected to an adverse employment action *at the time, or after*, the protected conduct occurred. *See Salak v. Pruitt*, 2017 WL 4402381, at *1 (D.D.C. 2017)("In short, because the record clearly establishes that the EPA's decision to transfer Salak was made *prior* to Salak's invocation of his rights … no reasonable jury could find that the agency decided to reassign Salak … *because* of his protected activity").

Both of these alleged adverse employment actions occurred prior to Duncan filing a grievance on January 29, 2016, accordingly there is no causal connection between Duncan's grievance for age discrimination. More directly, Duncan's non-assignment to the Bomb Squad was the sole reason he filed the grievance about the non-assignment. There is no evidence that supports Duncan's claim that he was treated adversely *because* of his grievance.

Duncan was issued a Memorandum on February 1, 2016 which articulated the reason why he was being placed on Administrative Leave with Pay. It states in relevant part:

> Based on the discovery of your past sustained charge of being untruthful in bringing criminal charges, this office believes that the case law requires that this information be disclosed to the Washoe County District Attorney for review and direction in regard to any limitations recommended on your use in investigating and reporting criminal misconduct.

Duncan met with Sheriff Allen to discuss his options in light of the *Brady/Giglio* violation in his employment file. Sheriff Allen gave him the option of transferring to a position in the Detention Division where he would not have to testify at trial or remaining in the Patrol Division. Duncan elected not to take the transfer and chose instead to retire from Washoe County. There is no evidence in the record that Washoe County's actions were causally linked to Duncan's grievance about non-placement on the Bomb Squad.

Accordingly, Duncan has failed to present a question of material fact in regard to his retaliation claim under Title VII and summary judgment is appropriate.

### III. Conclusion

In short, plaintiff has not presented any admissible facts or evidence to refute Washoe County's motion for summary judgment and no genuine issue of material fact exists for trial.

1 | Washoe County is therefore entitled to summary judgment on all of plaintiff's claims. Accordingly,
2 | Washoe County's motion for summary judgment (ECF No. 24) is hereby GRANTED. Each party
3 | will bear its own costs and fees.
4 |     The Clerk of Court shall enter a judgment in favor of the defendant and against the plaintiff.
5 | **IT IS SO ORDERED.**
6 | DATED: This 11th day of July, 2018.

*/s/ Howard D. McKibben*
UNITED STATES DISTRICT JUDGE